(No. 4349– )

LA VONA ALFORD JOHNSON, WIDOW, ET AL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 5, 1951.*

SCHMIEDESKAMP AND NEU, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

DELANEY, J.

La Vona Alford Johnson filed her complaint on October 10, 1950, as widow of Chester Howard Johnson, deceased, for compensation under the provisions of the Workmen's Compensation Act.

The record consists of the complaint, Departmental Report, transcript of evidence, abstract of evidence, and statement, brief and argument of claimant.

Mr. Johnson at the time of his death on October 18, 1949 was employed by the respondent as chief maintenance officer at the Illinois Soldiers' and Sailors' Home in Quincy, Illinois. On said date deceased was at the paint shop, where he was employed, discussing work to be done during the day with a group of painters, who were under his supervision. He suddenly became ill, fell to the floor of the paint shop, and died within a few minutes.

Deceased was five feet ten inches tall, and weighed 225 pounds. It was necessary that the deceased work extra hours from time to time, and very often he worked late at night. On Thursday, October 13, 1949, he worked

all day and all night until 5:00 A.M. the following morning. A double sink was removed from Cottage 22 at the Illinois Soldiers' and Sailors' Home in order to put a new bottom in it. The sink weighed about 300 pounds. Mr. Johnson with another employee carried the sink down a narrow 40 foot ramp leading from Cottage 22, and lifted the sink onto a pickup truck. The sink was taken to the tin shop, and Mr. Johnson and another employee lifted the sink from the truck, and carried it about 20 feet into the tin shop. Mr. Johnson drilled holes in the sink with an electric drill. He fitted about 80 rivets into the sink, pounding in the rivets. It was necessary to hit each rivet five or six times with a hammer. At midnight Mr. Johnson went home to rest, then came back to the tin shop about 2:45 A.M. the same morning. He helped another employee carry the 300 pound sink from the tin shop, lift it onto the truck, and with another employee carried the sink up the 40 foot ramp, and placed the sink in Cottage 22. He stayed on the job until 5:00 A.M. At that time he went home and went to bed, but got up about 9:00 A.M. and worked all day, which was Friday, October 14, 1949. On October 17, 1949 he came home about 4:00 P.M., and complained that he was not feeling well. The following morning, October 18, 1949, Mr. Johnson arose about 6:30 A.M., and said he felt a weight on his chest, and that it was difficult for him to breathe. On the morning of October 18, 1949, Mr. Johnson went to work as usual, went to his office, said he did not feel well, went to the tin shop, and thence to the paint shop, where he fell to the floor while giving the painters instructions for the day's work.

According to the testimony of Drs. James L.

Rouner, Hugh S. Espy and George Borden, the cause
of death was coronary thrombosis due to overexertion.
Dr. Hugh S. Espy, who specializes in internal medicine,
further testified that a coronary thrombosis develops
on arteries that are already diseased, and, when asked
if death occurs suddenly, replied "It may occur sudden-
ly, or it may occur any time within a matter of about
two weeks. Ordinarily, we regard the period of two
weeks after such an event the dangerous period. Sud-
den death may occur at any time during that interval
regardless of how the individual seems to be getting
along."

Claimant was married, but had no children under
sixteen years of age dependent upon him for support.
His earnings were $5,700.00 for the year prior to his
death.

There is no jurisdictional question presented by
the record, and we find that the deceased died in the
course of his employment by respondent.

Decedent's compensation rate will, therefore, be
the maximum of $15.00 per week. The death having
occurred subsequent to July 1, 1949, this must be
increased 50%, making a compensation rate of $22.50
per week.

Following the ruling of the Supreme Court of
Illinois in *Town of Cicero* vs. *Ind. Com.*, 404 Ill. 487,
claimant is entitled to an award of $6,000.00 compen-
sation under Section 7, Paragraphs (a) and (i) of the
Workmen's Compensation Act.

An award is, therefore, made to claimant, La Vona
Alford Johnson, in the sum of $6,000.00 payable as
follows:

$2,301.42, which has accrued, is payable forthwith;

$3,698.58, payable in weekly installments of $22.50, commencing October 12,
1951 and continuing for 164 weeks, with a final payment of $8.58.

All future payments being subject to the provisions of the Workmen's Compensation Act, jurisdiction is hereby reserved in this cause for the entry of such further order or orders as may from time to time be necessary.

Helen Woolley was employed to take and transcribe the evidence at the hearings before Commissioner Summers. Charges in the amount of $74.00 were incurred for these services, which charges are fair, reasonable and customary. An award is, therefore, entered in favor of Helen Woolley in the amount of $74.00, which is payable forthwith.

This award is subject to the approval of the Governor, as provided by Section 3 of "An Act concerning the payment of compensation awards to State employees".